UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LIVE UNIVERSE, INC., <br><br> Plaintiff, <br><br> v. <br><br> RENE MUIJRES, ET.AL., <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Civil Action No.: <br> 2:22-cv-04918-ES-JBC |

**PLAINTIFF LIVEUNIVERSE, INC.'S OBJECTIONS TO THE REPORT AND RECOMMENDATION (Dkt. 108) WITH SPECIFIC FOCUS ON IMPROPER FACT DETERMINATIONS REGARDING ALTER EGO AND CREDIBILITY**

Plaintiff LiveUniverse, Inc. ("Plaintiff") respectfully submits these objections pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1) to the Report & Recommendation filed December 8,  (the "R&R"), which recommends dismissal with prejudice for failure to prosecute. Plaintiff specifically objects to the R&R's implicit adoption of Defendants' improper efforts to: (1) secure premature fact determinations regarding alter ego relationships and standing before discovery or service of the First Amended Complaint ("FAC"); (2) invert credibility analysis by weaponizing a decade-old collateral vexatious litigant order against a non-party while ignoring federal findings that newly-added Defendant James Tarpey committed and was found to have committed industrial level fraud by multiple Federal Judges and the U.S. Government, and operated entities as his alter egos; (3) the R&R's recommendations conflicts with the purpose of granting leave to amend to add Tarpey; (4) the R&R improperly weighs "meritoriousness" based on defendants' contested assertions rather than the detailed allegations in the FAC; (5) The R&R's "vexatious litigation" finding is unsupported by the record; (6) the R&R improperly uses

1

unadjudicated "manufactured injury/scham corporation" and preclusion narratives to influence the meritoriousness factor to justify its dismissal with prejudice; (7) the R&R's "alternative sanctions would be futile" finding is conclusory and contradicted by the record showing the case can be managed with targeted remedies; (8) the R&R overstates "personal responsibility" and "bad faith" without adequately separating attorney-driven failures from client-level conduct; (9) The R&R's Reliance on a Missed OSC Appearance Does Not Justify Immediate Dismissal With Prejudice Without a Proportionate, Escalating Remedy and Opportunity to Cure; and (10) the application of Poulis on this record supports a lesser sanction and strict forward management, not dismissal with prejudice.

## I. STANDARD OF REVIEW

Under Rule 72(b) and § 636(b)(1), the district judge must make a de novo determination of those portions of the R&R to which specific objections are made.[1] The district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."[2]

## II. PROCEDURAL BACKGROUND CRITICAL TO THESE OBJECTIONS

### A. The First Amended Complaint Adds James Tarpey as a Defendant Based on Alter Ego Conduct

On September 25, 2024, this Court granted Plaintiff leave to file its First Amended Complaint ("FAC").[3] The FAC specifically added James Tarpey as a defendant based on detailed allegations that Tarpey:

---

[1] Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

[2] Fed. R. Civ. P. 72(b)(3).

[3] R&R at 5, Dkt. 82.

1.  Operated entities as his alter ego to perpetrate fraud schemes, for which federal courts have imposed over $8.4 million in penalties;

2.  Used shell entities to steal millions from timeshare owners through a bogus tax scheme that federal courts found involved false statements Tarpey knew or had reason to know were false;[4]

3.  Acted through the ViralHog-KMMT enterprise to misappropriate Plaintiff's intellectual property and trade secrets worth millions of dollars stored at Defendant Techie Hosting's Newark, New Jersey data center.[5]

B. Federal Courts Have Made Extensive Findings Against Tarpey

The FAC incorporates by reference extensive findings from federal proceedings against Tarpey, including:

2016 Consent Judgment: Federal district court permanently enjoined Tarpey from promoting a timeshare donation tax scheme after finding he made false statements resulting in tax avoidance and knew or had reason to know the statements were false.[6]

2021 Bench Trial Decision: Federal district court held Tarpey liable for approximately $8,465,000 in penalties under 26 U.S.C. § 6700 for promoting an abusive tax shelter. The court

---

[4] First Amended Complaint ("FAC") ¶¶ 99, 139-145.

[5] FAC ¶¶ 94-107, 525-527.

[6] FAC   139 (incorporating DOJ announcement and consent judgment).

found Tarpey used conflicted appraisers, made false statements about tax benefits, and operated the scheme through entities that functioned as his alter egos. [7]

2023 Ninth Circuit Affirmance: The Ninth Circuit affirmed, holding that "DFC [Donate for a Cause] functioned as Tarpey's alter ego" and specifically applied the corporate veil-piercing doctrine to impute DFC's income to Tarpey personally. [8] The court described Tarpey's operation as a "bogus tax scheme" that fraudulently induced customers with false promises.[9]

C. Tarpey Has Not Been Served on the First Amended Complaint

The FAC was granted leave in September 2024. Tarpey has not yet been served with process on the FAC. The R&R recommends dismissal with prejudice—the ultimate sanction—before Plaintiff can even serve the newly-added defendant whose federal fraud findings form a critical part of Plaintiff's RICO and alter ego theories.

D. Defendants' Strategy: Weaponize Collateral Vexatious Litigant Order While Seeking Premature Alter Ego Findings

Throughout this litigation, Defendants have pursued a strategy of avoiding merits adjudication by:

1. Seeking to attribute a decade-old California vexatious litigant order from a non-party Officer of the Plaintiff that are unrelated proceedings involving different parties to bar this New Jersey federal action;[10]

---

[7] FAC ¶¶ 141-142; see also incorporated Exhibit 54 (9th Circuit decision).

[8] FAC   142 (citing Tarpey v. United States, No. 22-35208 (9th Cir. Aug. 17, 2023

[9] Id.

[10] See litigation strategy memorandum discussing Defendants' reliance on "California vexatious litigant order reportedly entered by default" from proceedings involving "large technology company."

2.  Requesting the Court make premature fact determinations that a non-party (rather than Plaintiff) is the "real" alter ego of Plaintiff;

3.  Asking the Court to accept that this purported non-party has inferior credibility compared to Defendants based on the collateral vexatious litigant order—despite federal findings that Defendant Tarpey committed fraud, made false statements, and operated entities as his alter egos.[11]

This strategy seeks to invert the credibility analysis and secure dismissal without addressing the detailed allegations in the FAC or conducting discovery on the alter ego relationships that are central to Plaintiff's claims.

## III. SPECIFIC OBJECTIONS

## OBJECTION 1: THE R&R FACILITATES IMPROPER PREMATURE FACT DETERMINATIONS ON ALTER EGO AND STANDING BEFORE DISCOVERY OR SERVICE OF THE FIRST AMENDED COMPLAINT

### A. Alter Ego Determinations Require Fact-Intensive Discovery

The alter ego doctrine is an equitable principle that requires fact-intensive inquiry into corporate formalities, control, capitalization, commingling of funds, and whether recognizing separate corporate existence would result in fraud or injustice.[12] Courts consistently hold that alter ego determinations cannot be made at the pleading stage based on conclusory allegations, but require discovery and often evidentiary hearings.[13]

---

[11] Id.

[12] State, Dept. of Environmental Protection v. Ventron Corp., 94 N.J. 473, 500 (1983).

[13] See, e.g., In re U.S. Vision Data Breach Litig., No. 1:22-cv-06558, 2025 U.S. Dist. LEXIS 34345, at *6 (D.N.J. Feb. 26, 2025) (dismissing alter ego claim where plaintiff alleged only "bare-boned allegations of common control" without specific factual support).

As the District of New Jersey recently held in a 2025 data breach case, alter ego claims fail at the pleading stage when plaintiffs offer only "bare-boned allegations of common control" without specific factual support.[14] However, where—as here—a plaintiff alleges specific facts including federal court findings of alter ego relationships, shared offices, commingled operations, and use of shell entities to perpetrate fraud, those allegations are sufficient to survive the pleading stage and warrant discovery.[15]

The FAC contains detailed allegations that:

- Tarpey operated KMMT, LLC and ViralHog, LLC from the same Montana office (3701 Trakker Trail, Bozeman, MT) where he conducted his fraudulent tax schemes;[16]

- Federal courts found Tarpey's entities "functioned as [his] alter ego" with "no separate existence";[17]

- Tarpey used shell entities as "mere instrumentality" and "conduit" for fraudulent conduct;[18]

- Defendant Muijrers served as Managing Member of ViralHog while simultaneously breaching fiduciary duties to Plaintiff and misappropriating trade secrets;[19]

---

[14] Id. at *8

[15] See FAC ¶¶ 525-527 (alleging specific facts regarding alter ego relationships).

[16] FAC ¶¶ 143-144, 147.

[17] FAC ¶ 142 (incorporating 9th Circuit finding).

[18] FAC ¶¶ 526-527.

[19] FAC ¶¶ 150-152.

- The ViralHog-KMMT enterprise operated through Techie Hosting's Newark data center to misappropriate intellectual property worth millions.[20]

These allegations, supported by incorporated federal court findings, are more than sufficient to warrant discovery. Yet the R&R's recommendation of dismissal with prejudice would preclude any discovery into these relationships and effectively make fact determinations on alter ego and standing at the pleading stage—before Tarpey has even been served.

*B. The R&R Accepts Defendants' Invitation to Make Merits and Standing Determinations Without Discovery*

The R&R acknowledges it "is unable to definitively determine the meritoriousness of Plaintiff's claims at this juncture" but then cites Defendants' arguments about "manufactured injury," a "sham corporation," and preclusion defenses as creating "serious doubts as to the viability of Plaintiff's claims."[21]

This analysis improperly conflates procedural sanctions with merits adjudication. Standing and alter ego are fact-intensive inquiries that cannot be resolved through dismissal for failure to prosecute. If Defendants believe Plaintiff lacks standing or that alter ego relationships defeat claims, they must raise those arguments through properly noticed motions directed to the FAC—allowing the Plaintiff to set forth his evidence and specific facts "which for purposes of the summary judgment motion will be taken to be true".[22]

---

[20] FAC ¶¶ 94-107.

[21] R&R at 12-13.

[22] See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (standing determined based on allegations and evidence, not conclusory assertions).

Moreover, the R&R's citation to Defendants' "manufactured injury" and "sham corporation" arguments reveals the improper nature of this approach. Defendants argue that Plaintiff is not the real party in interest—that a non-party individual subject to a collateral vexatious litigant order is the "true" alter ego. But this argument:

1. Seeks a fact determination on alter ego (who is whose alter ego) before any discovery;

2. Inverts the traditional alter ego inquiry by arguing the plaintiff corporation is the alter ego of an individual shareholder, rather than the typical situation where a plaintiff seeks to hold an individual liable for corporate debts;[23]

3. Relies on collateral orders from different jurisdictions involving different parties and different underlying conduct that have no preclusive effect here;[24]

4. Ignores federal findings that Defendants themselves (particularly Tarpey) operated entities as alter egos to commit fraud.[25]

Courts should not make standing or alter ego determinations at the pleading stage based on untested factual assertions, particularly where the complaint contains detailed allegations supported by incorporated federal findings. Indeed, "general factual allegations may suffice". [26] The proper course is to allow discovery and require Defendants to raise their standing and alter

---

[23] The typical alter ego case involves a plaintiff seeking to pierce the corporate veil to hold an individual owner liable for corporate debts. Defendants' argument inverts this by claiming the plaintiff corporation is the alter ego of an individual.

[24] See Catabene v. Wallner, 16 N.J. Super. 597, 601 (App. Div. 1951).

[25] FAC ¶ 142.

[26] See Scheidler v. Nat'l Org. for Women, Inc., 510 U.S. 249, 255-56 (1994)

ego defenses through appropriate motions supported by evidence—not through dismissal for failure to prosecute.

*C. Dismissal Before Service of the FAC Is Particularly Improper*

The R&R recommends dismissal with prejudice before Plaintiff has served Tarpey on the FAC. This is particularly problematic because:

First, the Court specifically granted Plaintiff leave to amend to add Tarpey based on newly-discovered evidence of his fraud and alter ego conduct.[27] Dismissing with prejudice before Tarpey is even served nullifies the purpose of that amendment.

Second, Tarpey's federal fraud findings and alter ego determinations are central to Plaintiff's RICO claims. The FAC alleges that the ViralHog-KMMT-Techie Hosting enterprise used Tarpey's fraudulent business model (tested and proven in his tax schemes) to misappropriate Plaintiff's intellectual property.[28]

Third, courts recognize that dismissal with prejudice is an extreme sanction that should not be imposed where less drastic alternatives exist.[29] Here, the Court could: (a) set firm deadlines for service of Tarpey; (b) require proof of service; (c) schedule a case management conference; or

---

[27] R&R at 5.

[28] FAC ¶¶ 94-148.

[29] Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund, 29 F.3d 863, 867 (3d Cir. 1994) (dismissal with prejudice "too harsh" where plaintiff's behavior was "negligent and inexcusable" but lesser sanctions could address concerns).

(d) impose monetary sanctions. Dismissing with prejudice before the newly-added defendant is even served is unjustified.

OBJECTION 2: THE R&R FACILITATES AN INVERSION OF CREDIBILITY ANALYSIS THAT REWARDS A DEFENDANT WITH FEDERAL FRAUD FINDINGS WHILE PENALIZING PLAINTIFF BASED ON COLLATERAL VEXATIOUS LITIGANT ORDER

*A. Federal Fraud Convictions Are Automatically Admissible to Impeach Credibility*

Under Federal Rule of Evidence 609(a)(2), "evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment."[30] Crimes of fraud, false statements, and crimen falsi go directly to credibility because they involve "some element of deceit, untruthfulness, or falsification bearing on [credibility]."[31]

Unlike other criminal convictions (where courts must balance probative value against prejudice), fraud convictions are automatically admissible without any balancing test.[32] This reflects the principle that fraud directly relates to a witness's propensity to testify truthfully.

*B. Tarpey Has Extensive Federal Findings of Fraud and False Statements*

The federal proceedings against Tarpey resulted in findings that he:

- Made false statements regarding timeshare appraisals and tax deductions;[33]

---

[30] Fed. R. Evid. 609(a)(2).

[31] Fed. R. Evid. 609, Advisory Committee Note (Conference Report) (listing "perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense" as crimes involving dishonesty).

[32] See United States v. Sanders, 759 F.2d 1284, 1290 (7th Cir. 1985) (Rule 609(a)(2) crimes admitted without balancing test).

[33] FAC ¶ 141.

- Knew or had reason to know the statements were false;[34]

- Committed fraud through a "bogus tax scheme" that fraudulently induced customers;[35]

- Operated shell entities as his alter egos to perpetrate the fraud;[36]

- Earned over $22 million through the fraudulent scheme between 2010-2013.[36]

These findings were made after: - A 2015 civil enforcement action; - A 2016 permanent injunction (consent judgment); - A 2021 bench trial with extensive evidence; - A 2023 Ninth Circuit affirmance rejecting Tarpey's appeal[37]

The findings are final, based on extensive evidence, and directly establish Tarpey's history of making false statements for financial gain. Under Rule 609, these findings are automatically admissible to impeach Tarpey's credibility in any proceeding.

*C. Vexatious Litigant Orders Do Not Impeach Credibility or Establish Alter Ego*

In contrast to federal fraud findings, vexatious litigant orders:

1. Are procedural sanctions for filing repetitive or harassing litigation, not substantive findings of fraud or false statements;[38]

---

[34] FAC   139.

[35] FAC   142.

[36] FAC   142 (citing Ninth Circuit finding that government's expert determined Tarpey earned $22,323,437 in gross income from fraudulent activity between 2010-2013).

[37] FAC ¶¶ 139-142.

[38] See Houston Law Review, The Vexatious Litigant Problem (Dec. 15, 2024) (explaining vexatious litigant orders are "severe sanction" for abusive filing practices, not findings of fraud).

2.  Must be narrowly tailored to the specific vexatious conduct and typically limited to particular courts or jurisdictions;[39]

3.  Cannot be used for collateral attacks on unrelated proceedings involving different parties and different claims;[40]

4.  Do not establish alter ego relationships or lack of standing in separate litigation.[41]

Moreover, the vexatious litigant order Defendants cite is:

• Over a decade old (reportedly from 2013-2015 period);[43]

• From a different jurisdiction (California state court);

• Involving different parties (a large technology company, not these Defendants);

• Addressing different conduct (allegations in separate litigation, not the RICO/fraud/trade secret claims here);

• Not a finding of fraud or false statements—merely a procedural ruling about litigation conduct.[42]

*D. The Credibility Comparison Demonstrates the Absurdity of Defendants' Position*

Defendants ask this Court to:

---

[39] Id. (pre-filing injunctions must be "narrowly tailored to the vexatious litigant's behavior").

[40] See CASP, Vexatious Litigant and Attorney Sanctioned (Aug. 3, 2022) (vexatious litigant order cannot support "collateral attack on a prior judgment").

[41] No case law supports the proposition that a vexatious litigant order from a different jurisdiction involving different parties establishes alter ego relationships or lack of standing in separate litigation.

[42] Id.

ACCEPT AS CREDIBLE: James Tarpey, who has: - Federal findings of fraud and false statements - $8.465 million in penalties for promoting bogus tax scheme

- Ninth Circuit finding his entities were his alter egos - Federal court finding he knew or had reason to know his statements were false - Over $22 million in proceeds from fraudulent scheme - Pattern of using shell entities to commit fraud

REJECT AS NON-CREDIBLE: Plaintiff (and its associated individuals), based on: - Decade-old vexatious litigant order of a non-party and from different jurisdiction - Different parties and different underlying conduct

- No findings of fraud or false statements - No findings of operating shell entities as alter egos - Procedural sanction (not substantive fraud finding)

This inversion is absurd. If the Court were to make credibility determinations or assess alter ego relationships, the federal findings against Tarpey would be directly relevant and admissible, while the collateral vexatious litigant order would have limited (if any) relevance to the claims in this action.

*E. The Court Should Not Reward Defendants' Forum Shopping Through Collateral Orders*

Defendants' strategy is transparent: rather than defend against the detailed allegations in the FAC (including federal findings of Tarpey's fraud), Defendants seek to import collateral orders from unrelated proceedings to obtain dismissal without merits adjudication.

13

The vexatious litigant order—even assuming it exists as described—was entered in different proceedings involving different parties and different claims. It has no preclusive effect on Plaintiff's standing or alter ego relationships in this case.[43]

Moreover, allowing Defendants to weaponize collateral orders while simultaneously bringing in a defendant (Tarpey) with extensive federal fraud findings would create perverse incentives. Defendants with proven fraud records could shield themselves by pointing to procedural sanctions against plaintiffs in unrelated cases, while plaintiffs would be barred from highlighting defendants' substantive fraud findings.

The proper approach is for the Court to evaluate the claims in this case based on: - The allegations in the FAC; - Discovery into the relevant facts; - Properly noticed motions on standing and alter ego;
- Admissible evidence (including Tarpey's federal fraud findings if relevant).

The Court should not short-circuit this process by adopting Defendants' collateral attack strategy through a dismissal for failure to prosecute.

---

[43] Id. (only void judgments can be collaterally attacked; judgments are void only when rendering court lacked jurisdiction of parties, property, subject matter, or capacity to act).

OBJECTION 3: THE R&R'S RECOMMENDATION CONFLICTS WITH THE PURPOSE OF GRANTING LEAVE TO AMEND TO ADD TARPEY

*A. The Court Granted Leave Specifically to Add Tarpey Based on Alter Ego and Fraud Allegations*

On September 25, 2024, the Court granted Plaintiff leave to file the FAC "in the interests of final resolution" of the matter.[44] The FAC added three defendants, most notably James Tarpey, based on:

- Newly-discovered evidence of Tarpey's involvement in misappropriating Plaintiff's intellectual property;

- Federal court findings that Tarpey operated entities as his alter egos;

- Tarpey's pattern of using shell entities to commit fraud;

- Tarpey's connection to the ViralHog-KMMT enterprise that allegedly stole millions from Plaintiff.[45]

The Court's grant of leave to amend reflected a determination that these allegations, if proven, could support Plaintiff's claims and that amendment would serve judicial economy by resolving all related claims in one proceeding.

*B. Dismissing With Prejudice Before Tarpey Is Served Nullifies the Amendment*

If the Court adopts the R&R's recommendation of dismissal with prejudice:

1. Tarpey will never be served on the FAC, despite being added as a defendant four months ago;

---

[44] R&R at 5.

[45] Litigation strategy memorandum references order from approximately ten years ago.

2.    The federal findings against Tarpey will never be tested or applied in this litigation;

3.    Plaintiff's alter ego and RICO claims predicated on Tarpey's conduct will be extinguished without any merits adjudication;

4.    The purpose of the amendment—to add a defendant with federal fraud findings central to Plaintiff's theories—will be defeated

This outcome is particularly unjust where, as here:

•    The Court granted leave to amend;

•    The FAC contains detailed allegations supported by federal findings;

•    Defendants seek to avoid service and merits adjudication through procedural sanctions;

•    Less drastic alternatives (firm service deadlines, case management conference) are available.[46]

*C. Courts Should Grant Leave to Further Amend Rather Than Dismiss With Prejudice*

Even if the Court finds deficiencies in the current procedural posture, the appropriate remedy is to grant Plaintiff leave to cure those deficiencies—not to impose the ultimate sanction of dismissal with prejudice.[47]

---

[46] Prior Objections at 3-4 (identifying lesser sanctions including firm deadlines, required corporate representative appearance, monetary sanctions, and conditional dismissal without prejudice).

[47] See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

Here:

- No abuse of amendment privilege: Plaintiff sought and obtained leave to amend once; this is not a pattern of serial amendments;

- No prejudice to Defendants: The case is still at the pleading stage; no discovery has occurred; Defendants have not yet answered the FAC; *and do not even have a motion to dismiss on file.*

- Complaint is amendable: Plaintiff could cure any procedural deficiencies regarding service, corporate representation, or other issues identified by the Court.[53]

The R&R's recommendation of dismissal with prejudice—the most extreme sanction—is particularly inappropriate where Plaintiff has not had an opportunity to address specific deficiencies through amendment and where the FAC contains substantial allegations supported by federal court findings.[48]

OBJECTION 4: THE R&R IMPROPERLY WEIGHS "MERITORIOUSNESS" BASED ON DEFENDANTS' CONTESTED ASSERTIONS RATHER THAN THE DETAILED ALLEGATIONS IN THE FAC

*A. The Sixth Poulis Factor Requires Assessment of Plaintiff's Claims, Not Defendants' Defenses*

The R&R applies the six *Poulis* factors for assessing whether dismissal with prejudice is warranted.[49] The sixth factor—"meritoriousness of the claim"—requires the Court to assess whether Plaintiff's claims, if proven, could support relief.

---

[48] See Adams, 29 F.3d at 867 (dismissal with prejudice too harsh where lesser sanctions available).

[49] Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984).

The R&R states it "is unable to definitively determine the meritoriousness of Plaintiff's claims" but then relies on Defendants' arguments about "manufactured injury," "sham corporation," and preclusion to create "serious doubts."[50] This approach is backwards.

The meritoriousness inquiry should focus on whether the FAC alleges facts that, if proven, would support Plaintiff's claims. Here, the FAC alleges:

- RICO violations through a pattern of mail fraud, wire fraud, and computer fraud by an association-in-fact enterprise;[51]

- Trade secret misappropriation of intellectual property worth millions stored at the Newark data center;[52]

- Breach of contract and fiduciary duty by Defendants who owed contractual and fiduciary obligations to Plaintiff;[53]

- Alter ego liability for Tarpey and other Defendants who operated shell entities to perpetrate fraud.[54]

---

[50] R&R at 12-13.

[51] FAC ¶¶ 94-120.

[52] FAC ¶¶ 127-136.

[53] Harrison, 47 Fla. L. Weekly D1252a (internal quotation marks omitted).

[54] FAC ¶¶ 525-527.

These allegations are supported by: - Detailed factual allegations spanning 160 pages; - Incorporation of federal court findings against Tarpey; - Specific contracts, emails, and business records; - Allegations of specific fraudulent acts and misappropriations.[55]

*B. Defendants' Standing and Alter Ego Defenses Are Contested Factual Issues, Not Established "Doubts" About Merit*

The R&R's citation to "serious doubts" based on Defendants' arguments improperly treats contested factual defenses as established grounds for dismissal. Defendants argue:

- Plaintiff is a "sham corporation" formed to "manufacture injury" in New Jersey;

- A non-party individual is the "real" alter ego who lacks standing;

- Prior litigation bars this action through preclusion doctrines.[56]

But these are defenses that must be raised through proper motions with evidentiary support—not established facts that support dismissal for failure to prosecute. Moreover, these defenses ignore:

- Plaintiff is a New Jersey corporation formed in compliance with state law;[57]

- Plaintiff alleges millions in damages from trade secret misappropriation and breach of contract;[58]

---

[55] See generally FAC (160-page complaint with detailed allegations and incorporated exhibits).

[56] R&R at 12-13.

[57] FAC   1.

[58] FAC ¶¶ 100-104.

- Prior litigation involved different parties and different claims, and any preclusion issues must be adjudicated through proper motion practice;[65]

- Federal courts have found Defendants (not Plaintiff) operated shell entities as alter egos to commit fraud.[59]

The proper approach is to assess the meritoriousness of Plaintiff's claims based on the allegations in the FAC, not based on Defendants' contested defenses. Under this standard, the FAC alleges serious wrongdoing supported by federal findings, contractual documents, and detailed factual allegations—sufficient to support a finding that the claims have merit.

*C. The Court Should Not Conduct Merits Review Through the Back Door of a Poulis Analysis*

The R&R's discussion of "serious doubts" about Plaintiff's claims based on Defendants' standing and preclusion arguments effectively conducts merits review through dismissal for failure to prosecute. This is improper.

If Defendants believe Plaintiff lacks standing, that corporate formalities should be disregarded, or that preclusion doctrines bar claims, they must raise those issues through:

- Rule 12(b)(1) motion challenging subject matter jurisdiction/standing;

- Rule 12(b)(6) motion challenging failure to state a claim;

- Summary judgment motion with evidentiary support for preclusion or other affirmative defenses.[67]

These motions would allow Plaintiff to respond with evidence, conduct necessary discovery, and present its case. The Court would then make determinations based on the proper legal standards

---

[59] FAC ¶ 142.

and a full record. Dismissal for failure to prosecute should not become a substitute for merits adjudication, particularly where—as here—the defendant seeking dismissal (Tarpey) has not even been served and the issues raised by Defendants require factual development.[60]

D. The Court's framework relies on conjecture and credibility-laden, merits-adjacent inferences (including "vexatious litigation" and "manufactured injury/sham corporation" narratives) that have not been adjudicated through proper motion practice and a developed record. Lefteri Poulis and Athena Poulis, His Wife v. State Farm Fire and Casualty Company, 747 F.2d 863 (United States Court of Appeals for the Third Circuit 1984)

The R&R expressly acknowledges it is "unable to definitively determine the meritoriousness" of Plaintiff's claims yet gives weight to unadjudicated defenses to create "serious doubts" and support dismissal with prejudice. That approach is inconsistent with the Third Circuit's careful limits on case-terminating sanctions. Scarborough v. Eubanks, 747 F.2d 871 (United States Court of Appeals for the Third Circuit 1984).

The R&R's conclusion that alternative sanctions would be futile is conclusory and does not reflect meaningful use of intermediate sanctions that could address the Court's concerns without foreclosing merits adjudication. Donnelly v. Johns-Manville Sales Corp., 677 F.2d 339 (United States Court of Appeals for the Third Circuit 1982).

---

[60] See Adams, 29 F.3d at 867 (dismissal for failure to prosecute should not substitute for merits adjudication).

Even where dismissal authority exists, it remains discretionary and must be

exercised proportionally. Link v. Wabash Railroad, 370 U.S. 626 (Supreme Court of the

United States 1962).

OBJECTION 5: THE R&R'S "VEXATIOUS LITIGATION" FINDING IS UNSUPPORTED BY THE RECORD-UNSUPPORTED

Credibility and Motive Determination Driving a Case-Terminating Sanction

The R&R concludes that "Plaintiff's primary motivation in this action is not the resolution

of his claims but rather continuing its pattern of vexatious litigation." (R&R at 9–10.)

Plaintiff objects to this conclusion as an improper inference about motive that is

unnecessary to, and improperly distorts, the Rule 41(b) sanction analysis.

The Third Circuit requires a careful, record-based balancing of the Poulis factors before

imposing dismissal with prejudice, which is reserved for circumstances where that extreme

sanction is justly merited. Here, the R&R draws a sweeping inference about Plaintiff's "primary

motivation" based on  procedural difficulties (attorney turnover, failures to comply, and one

representative's problematic conference conduct). Those events may justify targeted sanctions

and strict scheduling. They do not, without more, justify an adjudicative conclusion that Plaintiff

is litigating for an improper purpose and therefore deserves prejudicial dismissal.  The R&R's

motive determination goes beyond what is necessary to remedy noncompliance and risks

converting case-management problems into a merits-dispositive credibility judgment.

OBJECTION 6: THE R&R IMPROPERLY USES UNADJUDICATED "MANUFACTURED INJURY/SHAM CORPORATION" AND PRECLUSION NARRATIVES TO INFLUENCE THE MERITORIOUSNESS FACTOR TO JUSTIFY ITS DISMISSAL WITH PREJUDICE

22

The R&R states that it is "unable to definitively determine the meritoriousness of Plaintiff's claims at this juncture," but then relies on Defendants' assertions that Plaintiff was formed to "manufacture injury" and that claims are "barred by multiple preclusionary doctrines" to create "serious doubts" about viability. (R&R at 12–13.) Plaintiff objects because this approach conflates a Rule 41(b) sanction inquiry with unresolved merits defenses.

Under Third Circuit law, "meritoriousness" in the sanction context is a limited inquiry that looks to whether claims appear facially viable, not whether Defendants have asserted defenses that might ultimately prevail. Scarborough v. Eubanks, 747 F.2d 871 (United States Court of Appeals for the Third Circuit 1984) And the Third Circuit has vacated case-terminating sanctions where district courts failed to properly address and balance Poulis factors on a full record rather than using conclusory reasoning.

The R&R's own inability to determine meritoriousness underscores why dismissal with prejudice is unwarranted. If Defendants contend that Plaintiff lacks standing, is a "sham corporation," or is barred by preclusion doctrines, those are merits defenses to be addressed through proper motion practice under the Federal Rules—not through a prosecution sanction that ends the case with prejudice.

OBJECTION 7: THE R&R'S "ALTERNATIVE SANCTIONS WOULD BE FUTILE" FINDING IS CONCLUSORY AND CONTRADICTED BY THE RECORD SHOWING THE CASE CAN BE MANAGED WITH TARGETED REMEDIES

The R&R concludes that alternative sanctions would be futile because Plaintiff has been unresponsive and noncompliant. (R&R at 11–12.) Plaintiff objects because Poulis requires serious consideration of alternatives before imposing the drastic sanction of dismissal with prejudice.

The R&R does not reflect a tried-and-failed sequence of intermediate sanctions. This matters because courts possess substantial authority to impose escalating sanctions short of dismissal, including fee shifting and other measures under inherent power, provided the sanction is exercised proportionally and with appropriate process. <u>Chambers v. Nasco, Inc.</u>, 501 U.S. 32 (Supreme Court of the United States 1991)

Where the concern is missed appearances, unclear representation authority, and lack of reliable contact information, there are obvious, effective alternatives: mandatory in-person appearance by a corporate representative, certifications by counsel regarding authority and control, verified contact information, strict deadlines, and cost shifting for specific wasted events. The R&R's futility finding is not supported by a showing that these measures have been imposed and disregarded.

OBJECTION 8: THE R&R OVERSTATES "PERSONAL RESPONSIBILITY" AND "BAD FAITH" WITHOUT ADEQUATELY SEPARATING ATTORNEY-DRIVEN FAILURES FROM CLIENT-LEVEL CONDUCT

The R&R finds Plaintiff largely, if not solely, responsible, and attributes bad faith to the litigation structure and counsel issues. (R&R at 9–12.) Plaintiff objects to the extent those conclusions are used to justify dismissal with prejudice rather than targeted sanctions.

The Third Circuit has cautioned that dismissal as a sanction for attorney misconduct should be a last resort and that, where feasible, sanctions should be directed at the responsible attorney rather than depriving the client of a day in court. Here, the record shows representation instability and breakdowns. That is serious. But it can be addressed through an order clarifying who controls the litigation, enforcing corporate-representation requirements, and imposing costs for specific noncompliance.

OBJECTION 9: THE R&R'S RELIANCE ON A MISSED OSC APPEARANCE DOES NOT JUSTIFY IMMEDIATE DISMISSAL WITH PREJUDICE WITHOUT A PROPORTIONATE, ESCALATING REMEDY AND OPPORTUNITY TO CURE.

Plaintiff acknowledges that the corporate representative's failure to appear in person at the December 17, 2024 Order to Show Cause hearing is serious. The R&R treats that failure as decisive. Plaintiff objects because even serious noncompliance does not automatically warrant prejudicial dismissal unless the Poulis factors—properly applied—show that no lesser sanction will suffice. The Third Circuit has vacated Rule 41(b) dismissals where the record did not adequately support findings on key Poulis factors and where the plaintiff lacked a full and fair opportunity to be heard regarding the reasons for noncompliance. Briscoe v. Klaus, 538 F.3d 252 (United States Court of Appeals for the Third Circuit 2008). Plaintiff respectfully submits that the appropriate response is a firm order compelling in-person appearance on a short fuse, backed by escalating and explicit consequences.

10.  APPLICATION OF POULIS ON THIS RECORD SUPPORTS A LESSER SANCTION AND STRICT FORWARD MANAGEMENT, NOT DISMISSAL WITH PREJUDICE

Plaintiff does not contend that Poulis must weigh against dismissal on every factor. The Third Circuit recognizes there is no mechanical formula and not all factors must favor dismissal to warrant it.  But where dismissal with prejudice is sought, Third Circuit precedent requires careful, record-based balancing and meaningful consideration of lesser sanctions. Id.

On this record, the Court can remedy the procedural problems without extinguishing the action. That result aligns with the Third Circuit's strong policy favoring merits determinations and its skepticism of dismissal based on conjecture rather than record evidence. Anthony Hildebrand v. County of Allegheny, 923 F.3d 128 (United States Court of Appeals for the Third Circuit 2019).

V. REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the District Judge reject the R&R's recommendation of dismissal with prejudice and instead:

1. Deny the recommendation of dismissal with prejudice and allow the case to proceed;

2. Set a firm deadline for Plaintiff to serve Defendant Tarpey on the First Amended Complaint;

3. Schedule a case management conference to establish deadlines for Defendants to answer or move to dismiss the FAC;

4. Defer any standing or alter ego determinations until after Defendants have raised those issues through proper motions and Plaintiff has had an opportunity to conduct discovery;

5. Clarify that collateral orders from unrelated proceedings do not establish alter ego relationships or lack of standing in this case;

6. Grant such other and further relief as the Court deems just and appropriate.

Dated: December 22, 2025

Respectfully submitted,

WENSTRAND LAW, LLC

Attorneys for Plaintiff LiveUniverse, Inc.

By: */s/ Anders Wenstrand-Nausthaug*

Anders Wenstrand-Nausthaug, Esq.