# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIVEUNIVERSE, INC.,<br><br>               Plaintiff,<br>vs.<br><br>RENE MUIJRERS, ICONV SPRL, TECHIE HOSTING, INC., VIRALHOG, LLC, CHRISTOPHER VANDEVYVER, IVAN RUSSO, KMMT, LLC, JAMES TARPEY, BRENT MAGGIO, RYAN BARTHOLOMEW, JOHN KUSHMAN, KELLY MONSON, WAYNE ANASTASIAS<br><br>               Defendants. | Case No: 2:22-cv-04918-ES-JBC |

---

## MEMORANDUM IN RESPONSE TO PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION

**Law Office of Matthew H. Sontz, LLC**
*Attorneys for Defendants ViralHog, LLC, KMMT, LLC, Brent Maggio, and Ryan Bartholomew*

53 Cardinal Drive, 3rd Fl.
Westfield, NJ 07090
T: 908-389-1330
F: 908-543-1300

Matthew H. Sontz, Esq. (NJ Attorney ID# 013082003) – Local Counsel
*Of Counsel and On the Brief*

Martin Rogers, Esq. *Pro Hac Vice* – Lead Counsel
**WORDEN THANE P.C.**
*Of Counsel and On the Brief*

# TABLE OF CONTENTS

Table of Authorities…………………………………………………………..iii

Introduction………………………………………………………............1

Argument…………………………………………………….................3

    I.       Objection 1: The Report and Recommendation is not based on LiveUniverse as the alter ego of its admitted President, Brad Greenspan, or Plaintiff's standing……………………………………..3

    II.     Objection 2: The Report and Recommendation is not based on other Courts concluding Plaintiff's President is a vexatious litigant………………………………………………….………8

    III.    Objection 3: LiveUniverse's alleged grievances about James Tarpey have nothing to do with the Report and Recommendation…………………………………………………9

    IV.    Objection 4: LiveUniverse's Amended Complaint is still woefully deficient………………………………………………...11

    V.     Objection 5: LiveUniverse does not deny that the Report and Recommendation accurately described the problems, delays, and prejudices it has caused…………………………………………14

    VI.    Objection 6: LiveUniverse still has not put together a coherent response to the myriad problems addressed in the two prior sets of motions to dismiss………………………………………………..15

    VII.   Objection 7: LiveUniverse's conduct shows no other sanction would be sufficient…………………………………………………16

    VIII.  Objection 8: LiveUniverse does not dispute that it is responsible for the delays and refusal to obey deadlines……………...…………18

    IX.    Objection 9: LiveUniverse's failure to appear when ordered is just one of the indications that Plaintiff does not follow Court orders…………………………………….....................................19

    X.     Objection 10: Imposing deadlines is not a cure for failure to follow deadlines…………………………………….......................21

Conclusion…………………………………………………...........22

# TABLE OF AUTHORITIES

## Cases

*Adams v. Trustees of the N.J. Brewery Employees' Pension*,
   29 F.3d 863 (3d Cir. 1994) ............................................................14, 20

*Adlife Mktg. & Commc'n Co., Inc. v. Karns Prime & Fancy Food, Ltd.*,
   No. 21-2074, 2023 U.S. App. LEXIS 832 (3d Cir. Jan. 13, 2023) ......................7

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.*,
   483 U.S. 143 (1987) .............................................................................13

*Briscoe v. Klaus*,
   538 F.3d 252 (3d Cir. 2008) ................................................................10

*Donnelly v. Johns-Manville Sales Corp.*,
   677 F.2d 339 (3d Cir. 1982) ................................................................16

*Emerson v. Thiel College*,
   296 F.3d 184 (3d Cir. 2002) ................................................................15

*Forbes v. Eagleson*,
   228 F.3d 471 (3d Cir. 2000) ................................................................13

*Gilyard v. Dauphin Cnty. Work Release, No. 1:10-CV-1657*,
   2010 U.S. Dist. LEXIS 128400 (M.D. Pa. Dec. 6, 2010) ...................................15

*Integrated Sols., Inc. v. Serv. Support Specialties, Inc.*,
   124 F.3d 487 (3d Cir. 1997) ................................................................12

*Iseley v. Bitner*,
   216 F. App'x 252 (3d Cir. 2007) ...........................................................4

*Lightning Lube Inc. v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993) ..................................................................4

*Livevideo.Ai Corp. v. Redstone, No. 24-CV-6290 (DEH) (BCM)*,
   2025 U.S. Dist. LEXIS 194990 (S.D.N.Y. Aug. 12, 2025) ........................6, 7, 17

*McMickle v. Gloucester Cnty. Sheriff's Office, No. 18-11847 (JBS/AMD)*,
   2019 U.S. Dist. LEXIS 73540 (D.N.J. Apr. 5, 2019) ..........................................16

*Mindek v. Rigatti*,
   964 F.2d 1369 (3d Cir.1992) ...............................................................14

*Rotella v. Wood*,
   528 U.S. 549 (2000) .............................................................................13

*Scarborough v. Eubanks*,
   747 F.2d 871 (3d Cir. 1984) ................................................................10

**Statutes**

18 U.S.C. § 1836 ......................................................................................13

18 U.S.C. § 1839 ......................................................................................13

**Other**

Fed. R. Civ. P. 4 ........................................................................................6

Fed. R. Civ. P. 23.1 .................................................................................12

Fed. R. Civ. P. 41 ...............................................................................1, 4, 7

Fed. R. Civ. P. 72 ......................................................................................2

# Introduction

Instead of grappling with the Magistrate Judge's fact-bound reasons for recommending dismissal with prejudice under Rule 41(b), Plaintiff's Objections sidesteps its own pattern of noncompliance and failure to prosecute.[1] Despite the Magistrate Judge correctly concluding that Plaintiff is the constant factor in a string of missed deadlines, failure to appear, and prior counsel who have left citing problems with their client, Plaintiff's Objection does not even try to explain the vast majority of the findings in the Report and Recommendation. Rather, Plaintiff spends the bulk of its brief discussing a Defendant that it has not even attempted to serve, despite LiveUniverse's Amended Complaint having been filed some fifteen months ago.

The Report and Recommendation is not about James Tarpey. It is about LiveUniverse, Inc. and a pattern of behavior that Plaintiff has exhibited since filing this case in August 2022 which has led us, more than three years later, to this point with no forward progress to show for it.

As the Magistrate Judge found, Plaintiff is not acting like a typical litigant, interested in advancing its claims. Plaintiff has not addressed the myriad problems

---

[1] Defendants ViralHog, LLC, KMMT, LLC, Brent Maggio, and Ryan Bartholomew (together "Montana Defendants") provide this response to Plaintiff's Objection (Dkt. 109) to the Magistrate Judge's Report and Recommendation under Rule 41 (Dkt. 108).

with Plaintiff's case laid out in the motions to dismiss. Plaintiff has not met deadlines the Court has imposed for motions and briefing. Plaintiff has not appeared before the Court when commanded to do so. Instead, Plaintiff has time and again chosen a strategy that has done nothing but waste time and resources, dragging this matter on, and on, and on.

The Report and Recommendation reached a sober but well-supported conclusion: nothing short of dismissal with prejudice is warranted given Plaintiff's behavior. More deadlines cannot fix a party that has no respect for them. Monetary sanctions will not stop Plaintiff from wasting time; its Objection indicates to the Court it intends to move to amend *yet again* if faced with a new round of motions to dismiss.

Fed. R. Civ P. 72(b)(2) requires "specific written objections" filed within 14 days. Objections that are untimely, generalized, or that simply make argument not based on the recommendations do not trigger *de novo* review and may be overruled on that basis alone. Here, LiveUniverse filed late and—on most issues—does not engage the Report and Recommendations factual findings or *Poulis* analysis with any record-based rebuttal. The Court should overrule the objections and adopt the Report and Recommendation.

## Argument

I.    **Objection 1: The Report and Recommendation is not based on LiveUniverse as the alter ego of its admitted President, Brad Greenspan, or Plaintiff's standing.**

Plaintiff's Objection 1 claims that the Magistrate Judge erred in establishing some type of alter ego between it and its admitted President, Brad Greenspan. Additionally, LiveUniverse complains that its case is being recommended for dismissal with prejudice due to questions about its standing.

Both arguments ignore the actual Report and Recommendation. The Recommendation does not find that the matter should be dismissed because LiveUniverse lacks standing, and does not find that it should be dismissed because Brad Greenspan has been found by other courts to be a vexatious litigant that other judges have ordered barred from being able to continue submitting futile and frivolous filings. Instead, the Recommendation relies on LiveUniverse's conduct throughout this litigation, including:

-    LiveUniverse's continued problems with a string of lawyers who have quit their representation and informed the Court about disputes with Plaintiff (Dkt. 108, pp. 2, 3, 6);

-    LiveUniverse's repeated failure to abide by Court-appointed deadlines, including a deadline to move to amend (Dkt. 108, pp. 3, 4, 5, 6);

- LiveUniverse's failure to address Defendants' arguments from their motions to dismiss (Dkt. 108, pp. 4, 11);

- LiveUniverse's President refusing to answer simple questions at a hearing (Dkt. 108, pp. 7, 10); and

- LiveUniverse failing, as instructed three times in a two-page order, to appear at the December 17, 2024 show cause hearing (Dkt. 108, pp. 7-8; Dkt. 98).

LiveUniverse created these problems and it bears responsibility for them. (Dkt. 108, pp. 9-11) ("[T]his case is still in its early stages, largely, if not wholly, due to Plaintiff[]").

Rather than make any attempt to address these facts and failings, LiveUniverse simply complains about other things that are not the basis of the Magistrate Judge's Recommendation and complains about the impact if the Court ultimately chooses to adopt the Recommendation: that it will not be able to litigate its case. But Rule 41, by its own language, allows the Court to dismiss an action for failure to prosecute. *See also Iseley v. Bitner,* 216 F. App'x 252, 254 (3d Cir. 2007); *Lightning Lube Inc. v. Witco Corp.,* 4 F.3d 1153, 1179 n. 15 (3d Cir. 1993) (Courts are empowered under inherent equitable powers to dismiss actions as a sanction for failure to prosecute, contempt of Court, or abusive litigation practices).

LiveUniverse's main grievance, that dismissal would mean dismissal, is not a "specific written objection" to the Recommendation, nor is it a reason to reject the Recommendation. The Recommendation is about sustained noncompliance, delay, and prejudice, not the merits.[2]

And while LiveUniverse goes on at length about James Tarpey, one of the Defendants added in the Amended Complaint, none of its claims about Mr. Tarpey relate to its failure to prosecute its case or to its continued behavior that has kept this matter at the pleading stage for more than three years.

LiveUniverse claims that adopting the Report and Recommendation would mean it could never serve Mr. Tarpey. But nothing has prevented Plaintiff, at any point in the past fifteen months since the Amended Complaint was filed, from serving him. That it has not is yet more evidence that Plaintiff's intent is not to pursue this matter but to exhibit more dilatory conduct, punishing Defendants with the process and cost of litigation along the way.

Of course, as the filings make clear, actually worrying about bedrock litigation steps like proper service does not bother LiveUniverse. In September 2022 (just over a month after it first filed this case), Montana Defendants pled that Defendants Ryan Bartholomew, Brent Maggio, and KMMT, LLC were not

---

[2] LiveUniverse's Objection does not even *acknowledge* these grounds for the Recommendation until page 17 of its 26-page brief. Even then, it does not deny the accuracy of the grounds or make any record-based argument why they are not well-founded.

properly served. (Dkt. 7-17, p. 29.) For more than a year now, LiveUniverse has been on even more specific notice about the deficiencies in the returns of service it filed on November 7, 2023, claiming to support service on Bartholomew, Maggio, and KMMT. (Dkt. 105, p. 9 (citing Dkts. 75, 77, and 78.). Those returns of service attempt to show that Bartholomew, Maggio, and KMMT were all served by serving the registered agent of Defendant ViralHog, LLC. As Defendants pointed out more than a year ago, this is not effective service on an individual, Fed. R. Civ. P. 4(e), and service on one company's registered agent is not service on another company's registered agent; Rule 4(f). For the past year, despite knowing this, LiveUniverse made no efforts to correct service, as a litigant who truly wanted to pursue its claims would.

That those returns of service were filed through Alfred Constants,[3] who was recently sanctioned jointly with another entity of Plaintiff's President Brad Greenspan after the Court in the Southern District of New York concluded that Greenspan's entity had been filing pleadings through Mr. Constants' CM/ECF account (in another case involving highly suspect service on defendants) is alarming. (Dkt. 108, p. 9, n. 3); *Livevideo.Ai Corp. v. Redstone,* No. 24-CV-6290 (DEH) (BCM), 2025 U.S. Dist. LEXIS 194990 (S.D.N.Y. Aug. 12, 2025) (report

---

[3] Plaintiff's Objection fails to address, let alone even mention, what the Magistrate Judge found "especially concerning": that other counsel appear to be playing a significant role in this litigation without appearing—Mr. Constants and Maria Guerrero. (Dkt. 108, p. 9).

and recommendation adopted *Livevideo.Ai Corp. v. Redstone*, 2025 U.S. Dist. LEXIS 193978 (S.D.N.Y. Sep. 30, 2025)).

In considering the proper resolution under Rule 41, the Court can look to the parties' behavior in other jurisdictions and other matters. *See Adlife Mktg. & Commc'n Co., Inc. v. Karns Prime & Fancy Food, Ltd.,* No. 21-2074, 2023 U.S. App. LEXIS 832, at *10 (3d Cir. Jan. 13, 2023) (when deciding on an appropriate sanction, "it is appropriate for Courts to consider the broader context of a party or attorney's conduct in other cases[.]"). LiveUniverse's argument about how other matters that Brad Greenspan is behind are separate from what Mr. Greenspan is doing here as the President of LiveUniverse would mock this well-established principle. If a litigant can simply avoid being held accountable for conduct in other Courts by filing under a new corporate entity, even while admitting he is at the helm,[4] then the rule loses all meaning.

Nor does the idea that the Court allowed LiveUniverse to file its Amended Complaint forgive all the other behavior the Report and Recommendation enumerates. It does not forgive all the missed deadlines, and all the costs to the Defendants that have been needlessly incurred along the way, and does not give any sign that this matter is now on track for orderly litigation.

---

[4] At no point in the Objection does Plaintiff deny that Brad Greenspan is its President, the head of LiveVideo.AI Corp in the New York case, or behind Palisades Capital in the previous case in this district referenced in the Recommendation.

Simply put, the fact that LiveUniverse's ability to continue to harass the Defendants will end if the Court adopts the Recommendation and dismisses this matter with prejudice does not make the Report and Recommendation, and the reasons that support it, any less valid.

## II.    Objection 2: The Report and Recommendation is not based on other Courts concluding Plaintiff's President is a vexatious litigant.

LiveUniverse's Objection 2 again simply ignores the actual basis of the Report and Recommendation in place of claiming that the vexatious litigant order against its President, Brad Greenspan (like the $10,000.00 sanction recently made against another of his entities), is being used to punish him here.

First, it is very unusual that Plaintiff refuses to even use the name of its own President, Brad Greenspan, who has admitted to the Court in a letter that he is behind LiveUniverse. (Dkt. 100).[5]

Second, again, that various Courts that have barred Greenspan from continuing to make frivolous filings is not the basis of the Report and Recommendation; LiveUniverse's actual conduct in this matter is.

Third, despite Plaintiff's attempt to try to make this decision about the credibility of one party or the other, credibility is unconnected to the Report and

---

[5] It is, however, interesting that Plaintiff's Objection refers to the ability to present its case using a male pronoun. (Dkt. 109, p. 7 ("[A]llowing the Plaintiff to set forth *his* evidence[.]") (emphasis added).

Recommendation's findings or the *Poulis* factors. The Magistrate Judge was not weighing credibility, did not make credibility findings, and did not rely on the credibility of a Defendant who has not even been served. Again, the Report and Recommendation is about LiveUniverse's actual conduct, none of which it spends any time refuting happened exactly as the Magistrate Judge laid out. Whether LiveUniverse complied with Court deadlines or orders is not a matter of credibility. Plaintiff consistently blew off clear deadlines, and does not dispute doing so, despite routinely having been told by the Magistrate Judge that those deadlines came with "NO FURTHER EXTENSIONS." (*See* Dkt. 105, pp. 8-9).

### III.    Objection 3: LiveUniverse's alleged grievances about James Tarpey have nothing to do with the Report and Recommendation.

As discussed above, that adopting the Report and Recommendation would dismiss this matter with prejudice is neither an actual objection to the Recommendation nor, in and of itself, a reason to reject the Recommendation.

As to the *Poulis* factor of prejudice to the Defendants, LiveUniverse makes no argument, and no attempt to respond to the Report and Recommendation's finding that Plaintiff's conduct has led to "wasting the time and resources of Defendants and of the Court[,]" "significant resources" spent responding to Plaintiff's various filings, and that rather than provide any "meaningful response" Plaintiff has instead demonstrated its pattern of delay by "continuously submit[ing] procedurally deficient and substantively improper" filings. (Dkt. 108, p. 11).

All LiveUniverse can muster in response is that Defendants have allegedly not been prejudiced because the case is still at the pleading stage. (Dkt. 109, p. 17).[6] That Plaintiff has been unable to move this case past the pleading stage or properly serve its Defendants in more than three years, despite Defendants expending tens of thousands of dollars along the way, is all the more evidence that the Report and Recommendation correctly concluded this matter should be dismissed with prejudice. *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984) (prejudice includes "excessive and possibly irredeemable burdens or costs imposed" on defendants, and true prejudice brought on by a party "would bear substantial weight" in favor of dismissal); *Briscoe v. Klaus*, 538 F.3d 252, 259 (3d Cir. 2008).

And, as above, nothing about LiveUniverse's various claims against James Tarpey undermines in any way the Report and Recommendation's conclusions that Plaintiff has not treated this matter as serious and proper litigation. If anything, Plaintiff's Objection shows that it intends to continue to play games and keep this matter at the initial pleading stage as long as possible, indicating that it is already planning to, yet again, try to amend its Complaint down the line. (Dkt. 109, p. 17 (noting that the Complaint could still be amended to "cure any procedural

---

[6] Plaintiff also notes that Defendants do not have active motions to dismiss, while ignoring that two prior rounds of motions to dismiss were not ruled on because of Plaintiff's conduct, and the Court has stayed Defendants requirement to respond to the Amended Complaint.

deficiencies regarding services, corporate representation, or other issues identified by the Court" and that dismissal is inappropriate "where Plaintiff has not had an opportunity to address specific deficiencies through amendment[.]")).

LiveUniverse has already been given the ability to amend[7] and has filed three versions of an Amended Complaint before settling on one. (Dkt. 108, pp. 4-5 (Plaintiff filed a proposed amended complaint, then a red-lined version that added significantly more allegations, then yet another different proposed amended complaint)); *see contra* Dkt. 109, p. 17 (arguing that LiveUniverse has not had a "pattern of serial amendments."). LiveUniverse is telegraphing its intent: it will not be substantively responding to what will be the third round of motions to dismiss if the Report and Recommendation's recommendation for dismissal with prejudice is not adopted, but this matter will stay at the pleading stage as it attempts yet another amendment.

## IV.    Objection 4: LiveUniverse's Amended Complaint is still woefully deficient.

Defendants have spent hundreds of pages in two sets of motions to dismiss detailing why Plaintiff's rambling complaints should be dismissed for lack of standing, lack of personal jurisdiction, and failure to state a claim. While they will

---

[7] With the benefit of two sets of motions to dismiss pointing out the inadequacies of its claims.

not reiterate all of those reasons in full, under the meritoriousness factor of *Poulis*, the Amended Complaint remains facially invalid for a litany of reasons, including:

**Tort claims cannot be assigned:** To begin with, the vast majority of Plaintiff's claims in the Amended Complaint, as in the initial Complaint, are tort claims. Tort claims, by law, cannot be assigned before a judgment. *See Integrated Sols., Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 490 (3d Cir. 1997) ("New Jersey Courts have consistently held that, as a public policy matter, tort claims cannot be assigned before judgment."). This has been pointed out to Plaintiff in both sets of motions to dismiss and remains a fatal issue with the Amended Complaint. Plaintiff still admits that its claims are based on an assignment of torts from its CEO, Brad Greenspan. (Dkt. 86, ¶¶ 63-64 ("In 2022, the CEO of LIVE transferred the rights to bring the causes of action included in this Complaint."). Because there can be no valid transfer of rights to bring a tort, Plaintiff's tort claims fail.

**Derivative claims, among other requirements, must be brought under a verified complaint:** At several points, Plaintiff's Amended Complaint (like its prior Complaint and various proposed amended complaints) claims to be bringing causes of action as derivative claims. Defendants have previously briefed how Plaintiff's derivative claims fail as a matter of law, including because the Amended Complaint is not verified as required by Fed. R. Civ. P. 23.1(b). Plaintiff has

known about this deficiency for years. Plaintiff filed an unverified Amended Complaint with derivative claims anyway.

**LiveUniverse admits it does not own the intellectual property it claims was stolen:** Plaintiff still does not allege ownership of any of the intellectual property at issue, and thus lacks standing to allege theft of that intellectual property. (Dkt. 86, ¶¶ 31, 52, 126, 173, 178, 194, 228, 230, 235, 237, 238, 239, 288, 318, 364, 380, 381, 382, 388, 397, 412, 419, 420, 421, 422, 441, 444, 476, 477, 478 (including subparagraph (b)), 509 (Defendant IconV owns the intellectual property); 18 U.S.C. § 1836(b)(1) (standing limited to an owner in claims under the Defend Trade Secrets Act); 18 U.S.C. § 1839(4) (defining owner).

**LiveUniverse's RICO claims are time-barred:** Counts 13, 14, and 15 of the Amended Complaint, which merely regurgitate the elements of various RICO claims with a conclusory remark that various Defendants have performed each element, are all time-barred by the applicable four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 152 (1987). A RICO claim accrues under the "injury discovery" rule when a plaintiff knew or should have known of their injury. *Forbes v. Eagleson*, 228 F.3d 471, 484 (3d Cir. 2000); *see also Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("[I]n applying the discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock").

Plaintiff has known about this deficiency since the first round of motions to dismiss. Yet the Amended Complaint still claims that Plaintiff first learned of the various alleged wrongdoing underlying its RICO claims back in 2015. (Dkt. 86, ¶ 441). Plaintiff was required to bring its claim by 2019 at the latest and did not.

Additionally, LiveUniverse overstates the Court's limitations in evaluating meritoriousness under *Poulis*. While the question is generally whether a party has made out a prima facie claim, when a defendant "raises a prima facie defense, the factor may not weigh in favor of the plaintiff." *Adams v. Trustees of the N.J. Brewery Employees' Pension*, 29 F.3d 863, 876-77 (3d Cir. 1994) (citing Poulis). Defendants have repeatedly laid out prima facie defenses to the claims. As the Report and Recommendation notes, Plaintiff, in its filings, failed to "address any arguments" set forth by the Defendants. (Dkt. 108, p. 4). At most, if the Court determines that there is both a prima facie claim and a prima facie defense, the meritoriousness factor weighs in neither party's direction. *See Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir.1992) (Not all Poulis factors must be met to make dismissal appropriate).

### V. Objection 5: LiveUniverse does not deny that the Report and Recommendation accurately described the problems, delays, and prejudices it has caused.

Again, in Objection 5, LiveUniverse deflects from addressing its problematic conduct by claiming that the Recommendation is based not on the

lengthy recitation of its pattern of dilatoriness and delay, but on other courts'

rulings against its President, Brad Greenspan.

The Court can infer the motivation of a party based on the conduct of that

party, as the Report and Recommendation did. *See Briscoe at 262* (willfulness

involves "intentional or self-serving behavior[.]"); *Gilyard v. Dauphin Cnty. Work*

*Release*, No. 1:10-CV-1657, 2010 U.S. Dist. LEXIS 128400, at *6 (M.D. Pa. Dec.

6, 2010) ("[R]epeated dilatory conduct and failure to abide by court orders

demonstrate a willful disregard for procedural rules and court directives.");

*Emerson v. Thiel College*, 296 F.3d 184, 191 (3d Cir. 2002) (finding dilatory

behavior in failing to comply with court orders and dragging a case out supports

dismissal).

LiveUniverse does not dispute that it behaved exactly as the Magistrate

Judge described. As a result, this objection fails.

## VI.    Objection 6: LiveUniverse still has not put together a coherent response to the myriad problems addressed in the two prior sets of motions to dismiss.

While labeled a new objection, Plaintiff's Objection 6 is just a restating of

its claim that its case has merit. And, again, the deficiencies in its Amended

Complaint, while serious and still unaddressed, are not the primary basis of the

Report and Recommendation. The Magistrate Judge is not recommending

dismissal on the conclusion that Plaintiff's claims lack merit. The recommended dismissal is based on LiveUniverse's conduct.

## VII.   Objection 7: LiveUniverse's conduct shows no other sanction would be sufficient.

Despite what LiveUniverse asserts, there is no requirement to show that previous sanctions have been attempted and failed. *McMickle v. Gloucester Cnty. Sheriff's Office*, No. 18-11847 (JBS/AMD), 2019 U.S. Dist. LEXIS 73540, at *9 (D.N.J. Apr. 5, 2019) (citing Poulis to say that the Court "need not find multiple instances of dilatory action to warrant dismissal"); *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir. 1982) (dismissal is an appropriate sanction "for those cases where there is a clear record of delay or contumacious conduct by the plaintiff"). Such a requirement would only encourage the escalation of sanctionable conduct and restrain judges' ability to deal with egregious behavior.

And as the Magistrate Judge's recommendation concludes, any lesser sanction than dismissal with prejudice would also not be effective given LiveUniverse's conduct.

While Plaintiff asserts that a scheduling order would cure any issues, it does not address that, for years, Plaintiff repeatedly ignored deadlines given by the Magistrate Judge. Many of those deadlines also came with the clear warning that there would be no further extension. One of the prime issues identified in the Report and Recommendation is that Court-imposed deadlines mean nothing to

LiveUniverse, and that it has shown it will not abide by them. The Objection even acknowledges that the Report and Recommendation was based on Plaintiff being "unresponsive and noncompliant." (Dkt. 109, pp. 23-24).

Nor will monetary sanctions deter Plaintiff. In the Southern District of New York case cited in the Report and Recommendation, even after another Brad Greenspan-controlled entity and its counsel Alfred Constants were fined $10,000.00 by the judge and ordered not to file any further motions without leave; it continued to file a series of motions. *See Livevideo.Ai Corp. v. Redstone*, No. 24-CV-6290 (DEH) (BCM), Dkt. 186, (S.D.N.Y. November 6, 2025). Mr. Greenspan (and by extension, the various entities he litigates through) simply do not care about following Court orders.

Finally, whatever vague idea Plaintiff presents about clearer corporate representation is also belied by LiveUniverse's own conduct. As the Report and Recommendation shows, when Brad Greenspan appeared at the November 2024 hearing, he refused to answer questions from the Magistrate Judge regarding his involvement with LiveUniverse. He then failed to appear at all at the December 2024 order to show cause hearing, despite the order being crystal clear that his attendance was mandatory. (Dkt. 98).

As with its discussion of a scheduling order, LiveUniverse's alternative sanctions amount to no more than a request for another chance at something that

has already been tried and failed. Anything less than dismissal with prejudice is merely giving LiveUniverse every opportunity to continue the pattern of behavior that led to the Report and Recommendation in the first place. (Dkt. 108, p. 12 ("No other sanctions would be effective if Plaintiff does not heed them."). A case scheduling order will not help; the Court has effectively provided Plaintiff with many scheduling orders. The Court has already tried to force a corporate representative to appear in person; that failed. Conditional dismissal will only make the prejudice to Defendants worse—Plaintiff would take another bite at the apple. Certifications by counsel about control will solve no identifiable problem. Verified contact information is a minimal standard, not a lesser sanction. Cost shifting is a tool for difficult discovery. Plaintiff has proven that nothing short of dismissal will end its litigation abuses.

## VIII.  Objection 8: LiveUniverse does not dispute that it is responsible for the delays and refusal to obey deadlines.

While seemingly intended as an objection to the Magistrate Judge's finding that Plaintiff, not its prior attorneys, is responsible for the history of delay and prejudice, Objection 8 fails to even deny responsibility, let alone argue that any of the findings are inaccurate.

Despite lip service to "representation instability," LiveUniverse has no answer for why problems persisted despite multiple lawyers, or why its prior counsel all left citing difficulties with their client.

## IX.     Objection 9: LiveUniverse's failure to appear when ordered is just one of the indications that Plaintiff does not follow Court orders.

The Report and Recommendation is not based entirely on Plaintiff's failure to appear at the December 2024 order to show cause hearing. But that failure is fully in keeping with Plaintiff's pattern of disregarding Court orders and failing to move its case forward, which is the primary basis of the Recommendation.

There is no better sign of how little care Plaintiff has for the Court's orders or authority than the failure to appear at the order to show cause hearing. The Magistrate Judge's order setting the hearing could not have been clearer that Plaintiff's attendance was mandatory. It said it not just once:

> **ORDERED** that Plaintiff and its counsel shall appear **IN PERSON** before the Honorable James B. Clark, III, U.S.M.J., Courtroom 2A, 50 Walnut Street, Newark, New Jersey 07102, on **December 17, 2024 at 10:30 AM**, to show cause why its claims should not be recommended for dismissal; and it is further

(Dkt. 98, p. 1).

Not just twice:

> **ORDERED** that should Plaintiff and its counsel fail to appear at the aforementioned Order to Show Cause hearing scheduled to take place on **December 17, 2024 at 10:30 AM**, the Court may recommend dismissal of Plaintiff's claims without further notice; and it is further

(Dkt. 98, p. 1).

But three times (in an order that was only two pages long), that Plaintiff must be at the hearing:

> **ORDERED** that Plaintiff, Plaintiff's counsel and counsel for Defendants shall appear in-person for the December 17, 2024 hearing.

(Dkt. 98, p. 2).[8]

That order was sent directly to Plaintiff by its prior counsel. Plaintiff's Objection does not dispute receiving the order and does not explain how any reasonable person could read the short order and miss that Plaintiff was required to appear in person. While Plaintiff says "the appropriate response is a firm order compelling in-person appearance on a short fuse, backed by escalating and explicit consequences"[9] Plaintiff was given just that: many warnings over the years culminating in the Order to Show Cause which included unequivocal language for Plaintiff's representative to appear in person at the December 17, 2024 hearing, with a warning that failure to appear could subject the case to a recommendation for dismissal. (Dkt. 98). Plaintiff blew it off. *See Adams*, 29 F.3d 863, 872 (when a party has independent knowledge that failure to abide by a Court order is grounds for dismissal, there is no requirement for a notice and hearing on that failure).

---

[8] Montana Defendants *pro hac vice* counsel traveled from Montana to New Jersey for the hearing, incurring additional expense and prejudice to the Montana Defendants especially considering Plaintiff did not attend.
[9] Dkt. 109, p. 25.

## X. Objection 10: Imposing deadlines is not a cure for failure to follow deadlines.

As the Report and Recommendation lays out, LiveUniverse has taken an approach to this matter that has caused three attorneys to walk away from representing it, each citing disagreements with their client. (Dkts. 16-1; 45-1; 84-1; *see also* Dkt. 48 where Plaintiff's second lawyer told the Court that he can "only file pleadings with a reasonable legal and factual basis for filing"). Plaintiff consistently blew through the deadlines the Magistrate Judge set, and when called to Court to answer for its conduct, did not attend.

Its Objection does not deny the findings of the Magistrate Judge. It does not deny missed deadlines, nor does it deny failing to abide by Court orders. It does not deny that the record shows what it shows.

These are not problems that more deadlines can cure. The problem is the failure to abide by them, and it is a clear sign that Plaintiff is not primarily interested in pursuing its case. More than three years after first filing its lawsuit, Plaintiff has not made proper service on the majority of Defendants, and appears to have made no effort to even attempt serving the Defendants added in the Amended Complaint, including James Tarpey, whom Plaintiff claims is a vitally important part of the case.

## Conclusion

LiveUniverse is not doing anything a party earnestly wishing to pursue its claims would do. The Magistrate Judge laid out a clear record supporting that conclusion, analyzed under the *Poulis* factors. Despite 26 pages of briefing, LiveUniverse makes no argument in its Objection that the findings of the Magistrate Judge do not accurately reflect its conduct here. Lesser sanctions, such as a scheduling order, will not resolve the issue: LiveUniverse does not care about Court orders. The Court should adopt the Recommendation and dismiss this matter with prejudice.

DATED: January 19, 2026.

**LAW OFFICE OF MATTHEW H. SONTZ, LLC**
*Attorneys for ViralHog, LLC, KMMT, LLC, Brent Maggio, and Ryan Bartholomew*
*s/ Matthew H. Sontz*
Matthew H. Sontz, Esq.


**WORDEN THANE P.C.**
*s/ Martin Rogers*
Martin Rogers, Esq. *Pro Hac Vice*